Hicks v. Mendenhall et al.

HENRY G. HICKS, Sheriff, &c.

*vs.*

R. J. MENDENHALL, *et al.*

In an action to recover the possession of specific personal property, proceedings to obtain the immediate delivery thereof were taken under the Gen. Stat. ch. 66, sec. 112 to 117, in ignorance of the provisions of ch. 76 of Laws of 1868, repealing secs. 115, 116, and 117, and amending sec. 114, so as to restore the practice as it was before the General Statutes took effect; and the property was taken upon the writ issued conformably to sec. 115. *Held*, that the said proceedings being unauthorized by law, the bond, which conformably to sec. 116, was executed and delivered as one step therein, had no force or validity whatever; and the sureties therein, being excepted to by the defendant in said action, and upon justification, found insufficient, a bond given in substitution thereof under sec. 120, such proceedings being altogether *coram non judice*, was equally gratuitous; and, therefore, if judgment were afterwards rendered in the action for defendant for a return of the property, and damages, and remained unsatisfied, no action lay for defendant in respect thereof on such substituted bond.

*Held*, also, that it would not alter the case in this respect, that all parties treated the proceedings as regular, and that when the sureties in the original bond were upon justification found insufficient, as aforesaid, the said substituted bond with one surety, only, having the requisite qualifications of such, was accepted by defendant as sufficient, who thereupon waived any further justification of sureties in said proceedings, and thereupon the property was delivered by the officer to the plaintiff pursuant to the bond; but that the officer notwithstanding continued to be liable as a trespasser in taking said property from the defendant.

Philip G. Hubbard, one of the defendants in this action, commenced an action in the district court for Hennepin county

against the plaintiff in this action, to recover the possession of certain specific personal property. Instead of indorsing a requisition to take the property on the affidavit as required by the act of March 6, 1868, he procured a writ from the clerk of said court, as provided by statute before the act of March 6, 1868, went into effect. The writ issued to the coroner of said county, and he took possession of the property. During the three days which the coroner held the property, the defendant in said action (said Hicks, sheriff, &c.) excepted to the sureties to the bond, and they were held insufficient. A new bond was then executed by said Hubbard, as principal, and said Mendenhall, as surety, in the usual form in such cases, which was delivered to said Hicks, who accepted the same as sufficient, and the property was delivered to said Hubbard. Judgment was afterwards rendered in said action for the defendant therein, (said Hicks) for the return of the property, or its value. No return being had, and the judgment remaining unsatisfied, this action was brought on the said bond; it was tried before the court without a jury, who found for the plaintiff, and judgment was entered in his favor against the defendants. The defendant Mendenhall appeals to this court insisting that the bond on which the suit was brought is void.

Lochren & McNair, for Appellant.

Samuel R. Thayer, for Respondent.

*By the Court.*—Ripley, Ch. J.—Hubbard commenced an action against Hicks, sheriff of Hennepin county, to recover possession of certain specific personal property, and instituted proceedings conformably to Gen. Stat. ch. 66, sec. 112 to 117, to obtain the immediate delivery of the same, in ignorance of the provisions of ch. 76 of laws of 1868, whereby said secs.

115, 116 and 117, are repealed, and sec. 114 so amended as to restore the practice as it was before the General Statutes were adopted.   *Castle vs. Thomas,* 16 *Minn.* 490.

The sheriff being a party, the writ in this case was directed to the coroner, who on the 14th July, 1868, served it conformably to sec. 117, and took the property into his possession, and after retaining it for more than three days, delivered it to Hubbard; but during said three days, Hicks, conformably to sec. 118, had excepted to the sureties in the bond which had been executed conformably to sec. 116, and upon justification conformably to sec. 120, such sureties were held insufficient, whereupon, pursuant to sec. 120, a new bond with Mendenhall as sole surety with the qualifications, and who justified in the amount prescribed by sec. 122, was executed and delivered to the sheriff, who accepted it as sufficient, and thereupon waived any further justification of sureties in said proceedings; and thereupon the property was delivered by the coroner as above mentioned to Hubbard pursuant to said bond.

The condition of the bond recites the commencement of an action for claim and delivery of personal property by Hubbard against the sheriff; that plaintiff therein executed to Hicks a bond in due form, with two sureties; that Hicks excepted to their sufficiency, and that, upon due notice and justification, they were found insufficient, and is, that if said action shall be prosecuted with effect, and the property returned to Hicks if a return is adjudged, and he be paid such sum as for any cause may be recovered against said Hubbard, then to be void.

All parties to these proceedings treated them as regular.

Judgment was afterwards rendered against Hubbard in said action, that the sheriff recover possession of said property, or its value if delivery could not be had, and $66, damages and costs.   No return being made, and the judgment remaining

wholly unsatisfied, this action was brought on said bond by the sheriff against Hubbard and Mendenhall, to recover the amount of said judgment.

Upon the facts above stated, the district judge finds as a conclusion of law, that it was competent for the parties interested in the original suit, to waive the matter of error and irregularity in the process under which the goods were taken, and that they did waive it.

The goods, however, were not taken under process in which there was irregularity or error, but under no process known to the law, whatever. The writ was void on its face, and the coroner in taking the property under it was a mere trespasser, and liable to the sheriff in damages, or replevin. Castle vs. Thomas, 16 Minn. 490. In this state of things, it would, of course, be perfectly competent for the sheriff to agree to waive and give up his right of action, aforesaid, and that the property might be delivered to Hubbard, and retained by him during the pendency of this action; and if such agreement were made in consideration of the execution and delivery of the bond in suit, it would be binding on the obligors therein; but this was not what was done. The parties treated the proceedings as regular, and proceeded throughout as if the General Statutes were still in force. All parties being supposed to know the law, no one of them can be taken to have been misled by any act of the other into any mistake as to what the law really was, or their respective rights and liabilities.

Upon the delivery of the bond to the sheriff he accepted it as sufficient, and thereupon waived any further justification of sureties in said proceedings; that is, he accepted it as a sufficient bond in substitution of the original bond under sec. 120, although it was signed by one surety alone. He waived that provision of the law which required two such sureties. Thereupon the coroner delivered the property to Hubbard *pursuant*

*to said bond.* This can only mean, that upon such acceptance and waiver of further justification, the coroner delivered the property to Hubbard, as the party entitled thereto under sec. 121; but by law he would not be the party entitled thereto, unless the property had been taken by the coroner upon a bond and affidavit endorsed as provided by the law of 1868.

Suppose that upon such justification the sureties in the original bond had been found sufficient; in excepting to them, the sheriff would have treated the proceedings as regular, just as the coroner did in taking the property on the bond and writ. The coroner's title to the possession would then be, a sufficient bond, and a void writ. The latter was a nullity. The coroner acquired the possession wrongfully, though he had a bond. His possession would continue to be so, though the sureties therein should, upon justification in the mode pointed out by law, be found sufficient.

After the acceptance of the new bond, the coroner's title was still only a good bond and void writ. If the sheriff had replevied the property from him the moment after he had accepted the new bond, such acceptance could have been no defence to the action.

If the sheriff's right to the possession could not be divested by a taking upon a good bond, alone, it could not be by a taking upon a bad bond, and a subsequent mere substitution of a good one, upon objection made to the sufficiency of the first.

As we have already remarked, the coroner's title to the possession must by law be based on the existence of two facts. If he was furnished by the plaintiff with a bond in the form prescribed, and a properly endorsed affidavit, he might lawfully take the property; but he could not retain it if upon objection made within three days, the sureties were found insufficient, unless such objection were removed by substituting

other sufficient security, or unless it were waived; but if he were not furnished with the endorsed affidavit, he could not lawfully take or intermeddle with the property at all.

An objection that he could not retain the property because the sureties did not possess the qualifications by law required, [that they were not freeholders for instance,] could not be construed into a waiver of the objection, that the taking and detention were for other reasons altogether wrongful.

An objection that the coroner has no right to keep the property because the sureties are not sufficient, is not an agreement that he may retain it, if they are made sufficient. If such objection is no such waiver, nor agreement, a waiver of the objection cannot be; and a waiver of the objection is all that has taken place here.

Hubbard did not *remove* the objection in the way provided by law, but the sheriff waived it in consideration of the delivery to him of the bond in suit.

If the sheriff had not excepted to the sureties within three days, that would have been a waiver of the objection, which he in fact made (sec. 118), and the coroner would have had all the right to retain the possession, which a sufficient bond could give; but such a bond could of itself give him *none,* and would have been no answer to an action of replevin, after three days, or after three years.

The consideration upon which this bond was executed and delivered, was, therefore, neither a benefit to the obligors, nor an injury to the sheriff. Hubbard had no right whatever to have the property delivered to him before it was given, and he acquired none by giving it. The sheriff was entitled to its possession before he accepted the bond, and after he had taken it continued to be so.

It appears, therefore, on the face of the bond, that the matters therein recited constituted no consideration in law

But the court finds, as a conclusion of law, that Hubbard "was estopped by his own acts, before the bond in suit was procured and tendered by him in order to procure the surrender of the property from said coroner."

Those acts were the giving of the original bond, and filing of the affidavit and requisition for the writ, required by the repealed sections.

If he was thereby estopped from questioning the obligation of this substituted bond, he must necessarily have been so with respect to the original bond.

If, therefore, this is a correct conclusion of law, the sheriff, if he had not excepted to the sureties in the first bond, and the cause had proceeded, as it did, to trial and judgment, might now maintain an action on said original bond; yet he certainly could not.  The statute made such bond one step in proceedings whereby Hubbard might lawfully obtain the delivery of the property to him pending the suit.  Unless executed and delivered as a part of such proceedings, it has no force or validity whatever.  In this case no such proceedings have been had.  *Jacoby vs. Drew*, 11 *Minn.* 408.

If Hubbard had given the bond and without taking any other step, whatever, as provided by law, to obtain the delivery of the property, had, nevertheless, taken it by the sheriff's consent into his possession pending the suit, it would not be contended that if he did not return it conformably to the judgment, the sheriff could maintain an action against him on the bond.

If he could not, the fact that Hubbard obtained the possession by some *unlawful* means, certainly would not avail to give him such a right of action.  This case, on the original bond, stands precisely so; that is, to illustrate, exactly as it would if the coroner, on receipt of the bond, had, without more, taken the property from the sheriff, and delivered it to Hubbard.

It is unnecessary to say that if Hubbard's acts could not have

estopped him to defend against an action on the original bond, they could not estop him in an action on this, which was substituted for it.

But it is said that the bond in suit was procured and tendered in order to procure the coroner to surrender the property to Hubbard. Suppose it was. The coroner, nevertheless, knew that that did not make his possession lawful, cr entitle Hubbard to it, and such acts were wholly futile, so far as the obtaining any lawful possession by Hubbard was concerned.

The court below, finds as a further conclusion of law, " that it was competent upon the justification of the sureties, the property being in the hands of the officer in abeyance, for the parties to recognize the validity of the proceedings, and to substitute a new bond in case of insufficient security, reciting such proceedings, and upon which the officer might act, and which would be available for the parties."

But the property was not in the hands of the officer in abeyance. It was in the hands of a mere trespasser. It was not competent for the parties to recognize the validity of a mere trespass. They did not substitute a new bond for insufficient security, for there was no security in the case, good, or bad.

Upon such substituted bond the coroner could not act, because he did not sustain the relation of an officer of the law towards the property at all.

It is this erroneous conception of the position of the coroner, that leads the court below to its final conclusion, "that said bond, having been under such circumstances tendered and accepted, and the property released to the principal upon the strength thereof, is by their own act operative and binding upon the defendants."

If the coroner delivered the property to Hubbard upon the

strength of the bond, he, nevertheless, knew that it gave him no right so to do; that, as before, the only thing he had to do in the premises was to return it to the sheriff. In law, therefore, it was not so delivered. If.the court below by saying, that the property was "released to the principal on the strength thereof" means that the sheriff, in consideration of such bond, agreed that the coroner might deliver the property to Hubbard, and that it was delivered in pursuance of such agreement, that is a recital of facts which nowhere appear in the findings of fact, and, as we have seen, no such agreement can be inferred from anything there found.

We take it, however, that the word "released" is used in the sense of delivered or surrendered by the coroner, and that this is only a recital in different words of the fact already stated to be found by the court, that "the bond was accepted by the sheriff as sufficient, he thereupon waiving any further justification of sureties in said proceedings, and thereupon the said personal property was delivered by said coroner to said Hubbard pursuant to said bond."

To sum up the whole matter, the giving of the original bond, under the circumstances of this case, was an act on Hubbard's part, as unauthorized, and as entirely gratuitous and idle, as if he had asked the first person he met in the street to take the property from the sheriff, handing him at the same time such a bond.

If that person saw fit thereupon to commit the trespass, that the sheriff should see fit not to object to the sureties, would give the bond no force whatever; nor, if such sureties should be found insufficient, and thereupon a bond should be given with sufficient sureties, would such substituted bond be of any force or validity, whatever; nor would the giving thereof be any less an idle and wholly gratuitous act than the giving of the first bond. Such proceeding would be altogether

*coram non judice.* Nor would it make such substituted bond any less ineffectual in law, if such trespasser should, upon its being given, see fit to deliver the property to Hubbard.

The coroner occupies exactly the position of such a trespasser. The bond sued on, never having become operative for any purpose whatever, is not the obligation of the defendant.

If, as the respondent says, the original action was commenced by Hubbard under a mistake of the means essential to secure possession; if, which does not appear, the coroner was under a like mistake in taking the property from the sheriff without authority of law, it is true, as respondent says, that they could take no advantage of their own error; but the sheriff, of course, might, as has been already stated, waive his right of action against them. If he did so, in consideration of this bond the defendant is liable thereon. The respondent asserts that he did, but the findings do not sustain him.

Judgment reversed and new trial ordered.