GEORGE M. BROOKS, Judge of Probate, *vs.* CHARLES S. WHITMORE & another.

Middlesex.    January 14. — September 8, 1886.

A trustee under a will gave a probate bond, with A. and B. as sureties. A. died, and D., who was a surety on another bond for the same principal as trustee of another estate, supposed that he was a co-surety with A. on the first-named bond, and petitioned the Probate Court to be discharged; and he was discharged accordingly. The trustee then gave another bond, in the same penal sum as the other, with B. and C. as sureties, which was approved by the judge of probate as "a new bond." The judge and the parties all acted under the same misapprehension as D. *Held,* that both bonds were valid; and that the sureties on each bond, after a breach thereof, were responsible in proportion to the several liabilities assumed by them.

CONTRACT, in two counts, against Charles S. Whitmore and George B. Brown. The first count was upon a probate bond, executed on May 25, 1875, by Whitmore as principal, and by George Phipps and Brown as sureties, in the sum of $40,000, and conditioned for the faithful performance by the principal of the duties of trustee under the will of Ellen K. Stone. The second count was upon a similar bond, executed on February 6, 1877, by Whitmore as principal, and by Othello O. Johnson and Brown as sureties, in the same penal sum, and containing the same condition. The case was submitted to the judgment of this court upon the following agreed facts:

On May 25, 1875, the defendant Whitmore was duly appointed trustee under the will of Ellen K. Stone, widow of Dexter Stone, late of Framingham, deceased, testate, and accepted said trust, and gave bond in the penal sum of $40,000, dated May 25, 1875, with George Phipps and the defendant Brown as sureties, which bond was duly examined and approved by the judge of probate on said day. Phipps afterwards died, and on February 6, 1877, Joseph A. White, who, with said Phipps, was a surety on a bond of said Whitmore, as trustee under the will of Dexter Stone, supposing that he was one of the sureties on said bond of May 25, 1875, petitioned the Probate Court to be discharged from further liability thereon, upon which petition a citation was issued to all persons interested in the estate, and a decree was entered in accordance with the petition.

On February 6, 1877, Brown and Othello O. Johnson, supposing that White was surety on the bond of May 25, 1875, and wished to be discharged from further liability thereon, and that there was no bond in force, executed the bond declared on in the second count, and on March 27, 1877, said instrument was examined and approved by the judge of probate as " a new bond." The petition of White, the citation and decree thereon, the execution, examination, and approval of the bond of February 6, 1877, and all acts done and performed in relation to the same were done and performed under a common misapprehension of fact, all the parties supposing that White was one of the sureties on the bond of May 25, 1875, whereas in fact White never was surety on said bond.

On January 9, 1883, Whitmore resigned his trust, which resignation was duly accepted. On September 4, 1883, Charles H. Adams was duly appointed trustee to succeed Whitmore, and accepted said trust. Whitmore filed his final account as said trustee, and, after a full hearing thereon, certain investments and payments were disallowed by the Probate Court, and a decree was entered by said court on November 13, 1883, charging him with $12,358.48, from which decree no appeal was taken, and a portion of said amount remains unpaid to the person or persons entitled thereto according to law.

Upon the foregoing facts, such judgment was to be entered as the court might determine.

*S. W. Trowbridge,* for the plaintiff.

*H. K. Brown,* for the defendants.

DEVENS, J. The proceedings which resulted in giving the bond of February 6, 1877, which is claimed to have been approved as a substitute for the bond of May 25, 1875, were set in motion by one White, who erroneously supposed himself to have been a co-surety on the bond of 1875 with Phipps, then deceased. As the result of his petition, he was decreed discharged as surety thereon, and the bond of 1877 was approved for the same liability as the bond of 1875. White was in fact surety on an entirely different bond, signed by the same principal, as trustee for a different estate.

The judge of probate may order a new bond, which will supersede an old one, in two cases: first, on the petition of any person interested, setting forth that the bond is insufficient; and secondly, on the petition of a surety to be discharged. Pub. Sts. *c.* 143, §§ 5, 6. In the former case, notice is to be given to the principal; in the latter, to all persons interested. Notice was in fact given on the petition of White to all persons interested, but the decree discharging him from the bond of 1875 was necessarily ineffectual, as he was under no liability on that bond.

Acting apparently under the same error as the judge of probate, the principal on the bond of 1875 filed a new bond, which was approved. Although there was no petition of any person interested, setting forth that the bond of 1875 was insufficient, or of any surety thereon to be discharged, it is contended that the approval of the new bond operated to supersede the old bond; and this because the judge of probate may, of his own motion, at any time, determine a bond to be insufficient, and may order and accept a new one, and this without notice to any one except the principal on the bond. Assuming this to be so, although it is certainly debatable, no express authority to this effect being found in the statute, and the reasons why all persons interested in an estate might reasonably be heard on the sufficiency of the bond being obvious, yet the facts do not show any intention thus to act on the part of the judge of probate. He had decreed the discharge of White from the bond of 1875, on which he supposed him liable, with, as he supposed, the concurrence of the

parties interested therein, all of which was erroneous. To interpret the act that follows, namely, the approval of the new bond, as an adjudication of the insufficiency of the original bond, and the acceptance of a substitute therefor, is to give it too wide a scope. The judge of probate cannot have adjudged the original bond to be insufficient; he did not even know who the sureties on it were. He knew nothing of Brown's liability on the first bond. Brown had made no motion to be discharged therefrom, and the judge erroneously supposed White to be one of the sureties thereon. He was not dealing with any such instrument as the bond of 1875 in fact is. Under these circumstances, the validity of this bond was not impaired.

If the original bond continued valid, there remains the question whether any validity is to be attributed to the bond of 1877. That several bonds instead of one may be given, the sureties on which may be treated as co-sureties, in proportion to the several liabilities assumed by them, is not doubted. *Loring* v. *Bacon*, 3 Cush. 465. The judge of probate in the case at bar had not adjudged the surety on the original bond to be insufficient, nor had the surety, on his own request, been discharged from further responsibility. A new bond had been given, which had been approved. Without some action as to the bond which preceded, or as to the liability of the sureties thereon, this mere approval cannot be deemed a substitution of the new bond for the original bond, but only as an acceptance of the new bond as an additional security.

It is said, however, that, unless the original bond was discharged, the new bond was given under such a mistake of fact that there can be no liability upon it. But the new bond was voluntarily given, and it was accepted; there was no mistake as to its object or condition. Its obligation is just what the parties intended it should be, when they executed it. There was a misapprehension as to the reason for filing it, on account of the common error as to the liability of White on the bond of 1875, into which all concerned had fallen. But this was not an error into which the sureties were led, except by their own carelessness. It may be that they would not have signed it except to release White from the responsibility they supposed he was under, but the slightest examination of the original bond would have

shown that he was under no such responsibility as he and they supposed.

It cannot constitute any defence to the sureties on the new bond, that, by reason of the validity of the original bond, their liability will be less than they intended.

In the opinion of a majority of the court, the case of *Loring* v. *Bacon, ubi supra,* here applies.   There should be judgment on each bond, and, *inter sese,* the sureties on the several bonds should be held responsible, in proportion to the amount of the bonds and the liabilities they have severally incurred.

*Judgment accordingly.*