## BELLINGER v. THOMPSON.
[S. C. 37 Pac. 714.]

1. EXECUTORS AND ADMINISTRATORS — POWER OF COUNTY COURT TO REQUIRE BOND — CODE, §§ 895, 1100.—The county court may, when it has reason to believe that an estate has been or will be mismanaged or fradulently administered, require an executor to give a bond, on a proper application by a legatee or creditor, notwithstanding an express declaration in the will that no bonds or security shall be required of the executor. This power is clearly conferred on the court by the terms of sections 895 and 1100, Hill's Code, whereby the court is given general control over executors and required to see to it that their duties are faithfully performed.

2. EXECUTOR'S BOND — LIABILITY OF SURETIES.—A bond voluntarily given for the faithful performance of his duties by an executor, which contains no provisions that are either unauthorized by law or against public policy, is valid as a common-law obligation, though the court had no authority to require such a bond.

3. EXECUTOR'S BOND — LIABILITY OF SURETIES — ESTOPPEL.—Where an executor, who is also appointed trustee to convert assets into cash and pay over the proceeds as directed, assumes such duties in the capacity of executor, his sureties, in an action on his bond, cannot escape liability by claiming that he was acting as trustee and not as executor, for both he and they are estopped by his conduct from questioning the capacity in which he acted.

4. EXECUTOR'S BOND — LIABILITY OF SURETIES.—Sureties on an executor's bond conditioned for the faithful performance of his duties according to law are liable for assets misapplied before the execution of the bond.

5. EXECUTOR'S BOND — POWER OF COURT TO RELEASE SURETIES — CODE, §§ 1096, 1097.—After an executor's bond has been given those who are interested in the estate have a vested interest in such bond, and it is not within the power of the court to release the sureties thereon, or to affect their liability, except by some statutory provision. In Oregon the only method provided for releasing or discharging a surety before the discharge of the executor is found in sections 1096, 1097 of Hill's Code, and any order of the county court attempting to otherwise release such sureties from liability is entirely void.

6. PRACTICE IN SUPREME COURT — WAIVER OF OBJECTION.—An objection that an action against the sureties on an executor's bond should have been

brought in the name of the wards, instead of in the name of their guardian, cannot be first raised on appeal.*

7. EXECUTOR'S ACCOUNTS— CONCLUSIVENESS OF FINAL SETTLEMENT.— A decree of final settlement of an executor's accounts is conclusive, not only upon the executor, but also upon the sureties, in the absence of fraud.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action brought by Chas. Byron Bellinger, as guardian of Linda and Ben Campbell Holladay, minor children of Esther Holladay, deceased, against David P. Thompson, Frank Dekum, and Wm. W. Spaulding, as sureties on official bonds of Rufus Ingalls, executor of the will of said Esther Holladay, to recover the sum of twelve thousand five hundred and fifty-eight dollars and nine cents, ascertained and found to be due to his wards from said executor on final settlement. The facts are that on April fifth, eighteen hundred and eighty·nine, the said Esther Holladay died leaving a will whereby she devised and bequeathed all her property to Ingalls, upon "trust to sell and convert the same into cash, and, after paying all testamentary expenses and just indebtedness, and making final settlement of said estate, to pay over all moneys so realized to the guardian of her children, Linda and Ben Campbell Holladay, to be held, managed, and expended by such guardian for their benefit." She appointed Ingalls sole executor thereof, and charged him, both as trustee and as executor, with the execution in his several capacities of the various trusts reposed in him, and expressly directed that no bonds should be required of him. The will was admitted to probate, and letters testamentary issued to Ingalls, who duly qualified as executor, and entered upon the discharge of his duties on the twenty-first day of April, eighteen hundred and eighty-nine, without

* To the same effect see *Wilson* v. *Wilson*, 26 Or. 252.— REPORTER.

bonds, and continued so to act until January twenty-ninth, eighteen hundred and ninety-one, when the plaintiff, as such guardian, filed a petition in the county court charging Ingalls with an abuse of his trust, and praying that he be required to file his final account, and pending the settlement thereof to deposit the money in his hands belonging to the estate in some bank of deposit, to be paid out only as the court might direct, or that he be required to give a good and sufficient bond to account for the money received by him to the use of such guardian, and for such further order and relief as to the court might seem proper. Thereafter such proceedings were had on said petition and Ingalls' answer thereto that on March twenty-seventh, eighteen hundred and ninety-one, the county court ordered and required Ingalls to file a good and sufficient bond as such executor, in the sum of twenty-five thousand dollars, "for the faithful execution of the trust reposed in him as executor of the last will and testament of said Esther Holladay, deceased, according to law." In obedience to this order, Ingalls, on April thirteenth, eighteen hundred and ninety-one, filed his bond in due form with one Julius Loewenberg as surety, which bond was approved by the county court. Afterwards, and on the twenty-third of the same month, on the application of Ingalls, the county court, without notice to or the consent of said guardian, made an order allowing him to substitute for the bond theretofore given with Loewenberg as surety, one with the defendants Thompson and Dekum as sureties, and ordered the first bond canceled and the surety discharged.

The Thompson and Dekum bond was thereupon executed, filed, and approved by the county court as a substitute for the Loewenberg bond. Thereafter, and on the fourth day of August following, upon another application by Ingalls, the county court, with notice to but without the consent of the guardian, made another order allowing

and permitting Ingalls to file a third bond with the de-
fendant Spaulding as surety, and relieving Thompson and
Dekum from liability on their bond on account of any
future acts of Ingalls as executer.   The Thompson and
Dekum bond and the Spaulding bond were each condi-
tioned as required by law, and each referred to the order
of the county court of March twenty-seventh, eighteen
hundred and ninety-one, requiring Ingalls to give a bond,
but no order was ever made requiring the execution of
either of said bonds, nor were they made or executed or
filed at the instance or request of any person interested in
the estate other than Ingalls.   The final accounting of
Ingalls as executer of the estate was made on December
fourteenth, eighteen hundred and ninety-two, upon con-
sideration of which it was found and decreed by the court
that there was a balance in his hands as such executor,
after allowing all proper credits, of twelve thousand five
hundred and fifty-seven dollars and nine cents, and that
there were claims against the estate still unpaid amounting
to two thousand six hundred and thirteen dollars and
twenty-two cents.   In the settlement of this account the
sum of seven thousand eight hundred and ninety-seven
dollars and eighty cents, which had been paid out by
Ingalls on alleged claims against the estate, principally
in his own favor, prior to the order of the county court
requiring him to give bonds, was disallowed and he was
charged therewith.   The order of the county court on
final settlement required Ingalls to pay and discharge
the outstanding claims amounting to two thousand six
hundred and thirteen dollars and twenty-two cents, and
to pay the balance of nine thousand nine hundred and
forty-three dollars and eighty-seven cents to the plaintiff
as guardian, and directed that upon the filing of the
proper receipts from the claimants and guardian his bond
should be exonerated.   On appeal to the circuit court the

decree of the county court was in all things affirmed, except that the executor was ordered and required to pay the said two thousand six hundred and thirteen dollars and twenty-two cents to the guardian to be by him disbursed to the claimants entitled thereto, "making the aggregate amount found to be due from the executor and ordered to be paid over to the guardian the sum of twelve thousand five hundred and fifty-seven dollars and nine cents." These orders having been disregarded, this action was brought against the sureties upon the second and third bonds filed by Ingalls. The case was tried without the intervention of a jury, and judgment rendered in favor of plaintiff for the amount claimed less the sum of two thousand six hundred and thirteen dollars and twenty-two cents found due to the other claimants, and by the circuit court ordered to be paid to the plaintiff but not allowed in this action.

The court held: *First*, that the county court had power to require General Ingalls to give bond as executor, notwithstanding the provision in the will exempting him therefrom; and that its order for that purpose, of March twenty-seventh, eighteen hundred and ninety-one, was valid and binding: *second*, that it had no power to substitute the bond with Thompson and Dekum as sureties, for that with Loewenberg as surety; nor the bond with Spaulding as surety, for that with Thompson and Dekum as sureties; nor to release any of said bonds or the sureties thereon, either in whole or in part: and that its several orders of April twenty-third and August fourth, eighteen hundred and ninety-one, attempting such substitutions and releases, were inoperative and void: *third*, that all three of said bonds were still in full force and effect, and were cumulative securities: *fourth*, that the sureties on each of the three bonds are liable in this action for the full amount found due from General Ingalls as such executor, and

directed to be paid by the order of final settlement of December fourteenth, eighteen hundred and ninety-two, regardless of the time when said amount, or any portion of it, may have been used or misappropriated by said executor.

From this judgment all parties appeal to this court; Bellinger claiming that he should have been allowed the money found due to other claimants; Thompson, Dekum, and Spaulding claiming that the bonds are all void for want of power in the county court to require them, and that General Ingalls can be held only as trustee, and not at all as administrator; and, further, that the money wasted and misapplied was so disposed of before any bonds whatever were ordered to be given.   In addition to these joint claims, Thompson and Dekum claimed that Spaulding should bear the entire loss because the money was lost either when Ingalls claimed to have disbursed it, in eighteen hundred and ninety-one, and before any bonds were signed, or at the time of the final settlement in December, eighteen hundred and ninety-two, after their bond had been released by the order of the county court; while Spaulding insisted that if any of the sureties were liable, they were all liable.                              MODIFIED.

*Messrs. James Finley Watson,* and *Edward B. Watson (Mr. Benjamin B. Beekman* on the brief), for Appellants Thompson and Dekum.

We maintain that the two bonds sued on were not voluntary, but were illegally exacted by the county court against the express exemption in the will, and are void. The exemption is as much a part of the will as any other provision in it, and Mrs. Holladay declared that such was her "express desire and will": *United States* v. *Tingrey,* 5 Pet. 129; *Carsell* v. *Scott,* 17 Ind. 514; *Benedict* v. *Bray,*

2 Cal. 251, 56 Am. Dec. 332; *Hicks* v. *Mendenhall*, 17 Minn. 475; *Holbrook* v. *Kennert*, 113 Mass. 269; *State* v. *Cannon*, 34 Iowa, 322; *Palicio* v. *Bigne*, 15 Or. 142; *Creamer* v. *Holbrook* (Ala.), 11 So. 830; *McBride* v. *McIntyre*, 91 Mich. 406; *Waterman* v. *Alden*, 144 Ill. 90.

We repeat the proposition that such exemption was the exercise of a personal right in providing for the disposition of property. And when General Ingalls accepted the trust on the terms prescribed in the will, and assumed its obligations, he became invested with the right to execute the trust without giving any "security or bonds whatever," as against Mrs. Holliday's legatees and all others, with the possible exception of creditors. The settled rule is that where the statute has made special provisions on any particular subject within the scope of the general probate jurisdiction, no other power can be implied. This court so held regarding the power of probate courts to order the sale of real property: *Wright* v. *Edwards*, 10 Or. 301. The statute does specially designate the power which the county court may exercise in cases like the present, and the way in which that power may be exercised. Where the court, upon proper application for removal by any heir, legatee, creditor, or other person interested in the estate, in writing, and notice to the executor, shall find the charge that he "has in any way been unfaithful to or neglected his trust to the probable loss of the applicant * * * to be true, it shall make an order removing such executor or administrator, and revoke his letters": 1 Hill's Code, § 1094. This is plainly the only remedy of the heir, legatee, creditor, or other person interested in the estate, and the only mode in which the county court can exercise its power in their behalf. There are other provisions to meet the contingencies of the executor's becoming a nonresident, or insolvent, or the insufficiency of his undertaking, but they are distinct from the former,

both as to the power exercised and the relief afforded: 1 Hill's Code, §§ 1095, 1096.

The powers of the county court are not enlarged or different proceedings authorized in these "specially designated" cases by the general provision that it shall have jurisdiction "to direct and control the conduct and settle the accounts of executors, administrators, and guardians": 1 Hill's Code, § 895.   Nor is the provision that "the mode of proceeding is in the nature of that in a suit in equity, as distinguished from an action at law," a grant of any equitable jurisdiction: Hill's Code, § 1078.   The special enumeration of both the powers and methods of exercising it in such cases as the present excludes all other powers and modes: *Wright* v. *Edwards*, 10 Or. 301.

But if the county court had the jurisdiction to require any bond, it must necessarily have had the power to accept a substitute and grant a release: *Veach* v. *Rice*, 131 U. S. 293; *Beard* v. *Roth*, 35 Fed. 397; *State* v. *Barrett* (Ind.), 22 N. E. 971; *Owen* v. *State*, 25 Ind. 371; *Lane* v. *State*, 27 Ind. 108.   And even if binding and in full force and effect, the bonds sued on must be construed with reference to the exemption in the will, the condition of the estate as shown by the record at the time they were given, and the petition for and order requiring them as well as their terms; from all which they were plainly intended to be prospective, and not to cover defalcations that had already occurred, and been notified both to the plaintiff as guardian, and to the county court: Brandt on Suretyship and Guaranty, §§ 464, 466; *Farrar and Brown* v. *United States*, 5 Pet. 388; *Bissell* v. *Sexton*, 66 N. Y. 55; *Rochester* v. *Randall*, 105 Mass. 295, 8 Am. Rep. 519; *Van Sickle* v. *Buffalo Company*, 13 Neb. 103; *Patterson* v. *Inhabitants of Freehold*, 38 N. J. L. 255.

The judgment entered on the findings is wrong on any possible theory in the case.   Thompson and Dekum are

liable, if at all, on one instrument, and Spaulding on another. Whatever judgment plaintiff was entitled to should have been rendered against the sureties on each bond separately, and not *in solido.*

General Ingalls, holding the legal title to the property upon trust to convert it into money, and pay the balance of the proceeds after payment of testamentary expenses and debts to the guardian of the minor children, was under obligation to account to such guardian, as trustee, and not otherwise. He was entitled to reasonable compensation for his services as such trustee, and reasonable expenses incurred in the execution of such trust, distinct and apart from his statutory commissions and allowances as executor; these might be more or less than his commissions and allowance for expenses as executor, but they could not be measured by the statute. A court of equity, proceeding upon equitable grounds, alone, would be competent to fix the amount of such compensation and allowance. And the balance after such equitable settlement and allowance would remain in his hands as such trustee, for the plaintiff, as guardian of the minor children. And a court of equity, alone, could determine when the trust was fully executed, and a final settlement just and proper. In short, the management of the trust estate, and the settlement of the trustee's accounts therewith, were and are exclusively within the jurisdiction of the proper court of equity, and the beneficiaries of the trust could not call him to account elsewhere. The county court had jurisdiction to control his conduct and settle his accounts as executor, to the end that all testamentary expenses and debts to creditors should be paid. Beyond that it had no power. There it had to leave him to give an account of his trusteeship and settle for the balance of the trust funds that had come into his hands, with his beneficiaries, in the proper court of equity. And its order of final settlement,

attempting to settle his accounts as trustee, and direct the payment of the balance of the trust funds so ascertained to be in his hands to the plaintiff, as guardian of the beneficiaries, was simply in excess of its jurisdiction, and void.

Mrs. Holladay's will gave, bequeathed, and devised her entire estate "unto her personal friend, General Rufus Ingalls, * * * his heirs, executors, and administrators," upon the trusts therein prescribed, and the order of final settlement in the county court did not and could not relieve him or his heirs and personal representatives from liability to account for the trust estate in the proper court of equity. The authorities in support of our contention that he was responsible for the balance of the proceeds after paying testamentary expenses and debts to the beneficiaries as trustee, and not subject to the control of the county court in that capacity are both uniform, decisive, and numerous: *Creamer* v. *Holbrook* (Ala.), 11 So. 830; *McBride* v. *McIntyre* (Mich.), 51 N. W. 1113, 91 Mich. 406; *Segur* v. *Belton*, 6 Har. & J. 162; *Bell* v. *People*, 94 Ill. 230; *Ruffin* v. *Hanison*, 86 N. C. 190; 1 Woerner on American Law of Administration, § 255; *Waterman* v. *Alden*, 144 Ill. 90, 32 N. E. 972.

*Messrs. Geo. H. Williams*, and *Chas. J. MacDougall* (*Messrs. Chas. E. S. Wood, Stewart B. Linthicum, J. Couch Flanders, Schuyler C. Spencer*, and *Wm. A. M. Jones* on the brief), for Appellant W. W. Spaulding.

*First*, the county court had no jurisdiction or power to compel General Ingalls to give any bond in view of his exemption therefrom by the express provisions of the will, and all orders made for such purposes are void. We concur with what is said by the attorneys for Dekum and Thompson upon the point as to whether or not the county court had power to order General Ingalls to give

these bonds, or as to whether or not they could be made, if valid, retrospective in their operation, so as to include a misappropriation of money made by him before any of said bonds were executed, and deem it unnecessary to repeat or add anything to same. We also concur in what is said by those attorneys as to the modification of the order of the county court for final settlement, making the sums due other claimants payable to the guardian of the children of Mrs. Holladay. *Second*, if the bonds are legal and valid they do not embrace, and were not intended to embrace, any misappropriation of money made by General Ingalls before the order requiring him to give bond was made by the county court, and the county court, in view of the provisions of the will, had no power or right to make these bonds retrospective in their operation, and such was not the intention of the court or of General Ingalls or his sureties at the time said order was made. *Third*, if the first bond given by General Ingalls, with Loewenberg as surety, given in pursuance of said order, was valid, then the county court had no power to release said Loewenberg or discharge said bond or substitute therefor the bond of Ingalls with Dekum and Thompson as sureties, nor had the court, if the bond of General Ingalls with Dekum and Thompson as sureties was valid, any power or right to release said Dekum or Thompson or to discharge said bond or to substitute therefor the bond of General Ingalls with appellant, Spaulding, as surety; and if any of the bonds are or were valid, they are all valid, and are cumulative securities.

Our Code, section 1094 *et seq.*, provides the manner in which a new bond or undertaking may be given by an executor, and no power is conferred upon the county court to discharge the original undertaking of the executor in any other manner. No matter whether the bonds of General Ingalls with Loewenberg and Thompson and Dekum

were statutory or common-law bonds, after they were ex-
ecuted and delivered the heirs, devisees, or creditors of the
testatrix, Mrs. Holladay, had an interest in those bonds.
They were the *cestuis que trustent*, and such bonds could
not be set aside or annulled without their consent, or, at
any rate, without notice to them of the proceeding.    When
an executor hâs given a bond, which has been accepted
and filed, for the performance of his duties as such ex-
ecutor, he cannot, upon his own motion, to suit his own
convenience or his own interest, get an order setting aside
that bond and discharging the sureties thereof, and substi-
tuting a new bond therefor; because, if such were the case,
there would be no security for the estate.

The county court attempted to annul the bond on which
Loewenberg was surety upon the application of General
Ingalls, without notice to anybody interested in the estate,
and he undertook to obtain a discharge of the bond on
which Dekum and Thompson were sureties by notice to
the guardian of the children of Mrs. Holladay, and the
order was made against the opposition and protest of the
guardian.    It does not follow that because the county
court had power to order General Ingalls to give the bond
that the court at any time upon his application could
annul that bond, because the bond was in substance and
in equity given to the heirs, devisees, or creditors of Mrs.
Holladay, and after it was executed they acquired rights
under that bond of which they could not be deprived with-
out due process of law: *Wood* v. *Williams,* 61 Mo. 63; *Du-
pont* v. *Mayo,* 56 Ga. 306.

By reference to the cases cited by the attorneys for
Dekum and Thompson upon this point, the court will find
that they are all cases in which the proceedings for the
discharge of sureties upon a bond were in accordance with
the provisions and requirements of a statute for that pur-
pose, and generally accompanied with the provision that

after such discharge the sureties should no longer be liable upon their bonds. We have no provisions in our Code for allowing an executor or administrator to substitute one bond for another, except the sections referred to, commencing with section 1094 and ending with section 1097; and it is not pretended that the proceedings by which the county court undertook to substitute one bond for another in the case of General Ingalls were in conformity with the provisions of this statute. We, therefore, claim that the county court had no right to annul any of these bonds without the express or implied consent of the parties interested, any more than it had a right to dissolve any other contract between the parties without their consent.

Our contention as against Dekum and Thompson is this: That if any of the bonds were valid, which we deny, they are all valid and all in force, and are cumulative securities, and that, therefore, the judgment *in solido* against Dekum and Thompson and Spaulding, is correct, and in that respect ought to be affirmed. We claim that if these bonds were valid, the plaintiff had a right to sue upon either bond, or upon any two, or all of them together, as he might choose, and the judgment would be against all the bondsmen who were made defendants, and they could contribute among themselves as to the payment of the judgment as they might choose.

*Messrs. Chas. B. Bellinger in pro. per.* and *Rufus Mallory,* and *Albert H. Tanner,* for Respondent.

The guardian makes the following points: *First,* the county court had authority to require the executor to give a bond, notwithstanding the provision of the will relieving him from doing so; *second,* if the county court was without such authority, it was open to the executor to have ap-

pealed from such order.    Not having done so, and he and
his sureties having voluntarily given their bond, with full
knowledge of its object and condition, the sureties are
liable thereon; *third,* the surrender and cancellation of the
Loewenberg bond, having been in consideration of the
bond of Thompson and Dekum, estops them to deny their
liability on such substituted bond; *fourth,* the bonds were
in effect conditioned that the executor would faithfully
account for the trust estate or funds coming into his hands,
and it is immaterial whether there had been misapplication
of trust funds prior to the execution of the bond, — bonds
of this character being distinguished in this regard from
public official bonds.

Opinion by MR. CHIEF JUSTICE BEAN.

1.    The defendants contend that because Mrs. Holladay
expressly declared in her will that no bonds or security
should be required of Ingalls as the executor thereof, the
county court had no authority to require him to give
bonds, and, this being so, no liability exists upon the bonds
in question.    Under the early English law the spiritual
courts, which had jurisdiction in the settlement of estates,
exerted so little authority over an executor, who was sup-
posed to derive his powers from the testator and not from
the grant of the ordinary, that they refused to require
bonds of him, even though he should become insolvent, or
misappropriate and squander the assets of the estate.
But the consequence of this doctrine was such that the
courts of chancery were early compelled, in order to pro-
tect widows and orphans, to assume a new jurisdiction;
and it became a rule of that court that an insolvent and
bankrupt executor, or one who was unfaithful to his
trust, would be compelled to give security for the faithful
performance of the duties of his office: Schouler on Exec-

utors and Administrators, § 137. In this country the duties of the spiritual court and of the court of chancery in this respect are exercised by courts having probate jurisdiction. The English rule permitting an executor to administer upon the estate of his intestate without giving bonds in the first instance prevails in many states, but in a majority of them, including Oregon, the privilege is given only when the will expressly so directs: Hill's Code, § 1088; 1 Woerner on Law of Administration, 250. In the latter case the will simply operates to place the executor in the same position in which he is placed in those states which have adopted the English rule. The exemption which the will makes under the sanction of law in the one case is of no more authority than the exemption which the law makes without reference to the will in the other. Upon this question a recent work on the law of administration says: "In those of the states in which an executor is permitted to administer without giving bonds, whether the exemption arise under the statute or by express direction of the testator, his office is one of special trust and confidence, for which reason no bond is required of him. But if a court becomes satisfied that the executor who was solvent when named in the will, is likely to become insolvent, and that there is danger that he may abuse his trust, or has ground to suspect that he will indirectly and fraudulently administer the estate to the prejudice of creditors or legatees, he will be ordered to give bond with sufficient surety to protect the estate": 1 Woerner on Law of Administration, 251. This is thought to be but an exercise by the probate court, which is given exclusive jurisdiction in the first instance over the administration of estates, of the powers formerly exercised and enforced in chancery in order to protect estates. In *Re Holderbaum's Estate*, 82 Iowa, 69, 47 N. W. 989, it is held that, though the law provides that bonds shall not be required of the executor,

yet, when the effect of his management of the estate is to destroy the security of a creditor, it is proper for the court to order him to give bonds. The order requiring bonds in this case, it is true, was made on the motion of a creditor, but this is of no consequence in determining the power or authority of the court. The rights of a legatee are certainly as much entitled to protection as those of a creditor, and if the court has authority to require bonds for the protection of the one, it certainly has for the other.

By the statute of Mississippi it is provided that an executor may be exempted from giving bonds by the intestate, and in such case no bonds shall be required, unless the court at any time shall have good reason to suspect the executor of fraud or maladministration. In *Clark* v. *Niles,* 42 Miss. 463, the court, in referring to this statute, says: "This statute only reiterates what has been the action of courts having jurisdiction of the settlement of estates of deceased persons. The nature of the business, as well as the relation between the probate judge and administrators or executors, requires that the judge should have and should more frequently exercise a general supervision over the settlement of estates, and upon his own motion require the representatives of such estate to give new or additional bonds whenever, in his judgment, the interest of the heirs or creditors of such estates might seem to require the same." By our statute (Hill's Code, § 1078,) the mode of proceeding in the county court in the transaction of probate business is in the nature of a suit in equity, as distinguished from an action at law, and such court, under Hill's Code, § 895, has exclusive jurisdiction "to direct and control the conduct and settle the accounts of executors, administrators, and guardians"; and it is made its duty by section 1100 "to entertain a supervisory control over the executor, to the end

that he faithfully and diligently performs the duties of his trust according to law." These sections of the statute, it seems to us, plainly confer upon the county court jurisdiction to control and exercise general supervision over executors and administrators, to the extent of requiring of them bonds for the faithful performance of their trusts whenever, in the opinion of the court, the interests of the estate require the same. It is charged by law with the duty of seeing that such officers faithfully perform the duties of their trust, and it is necessary to the safety and interests of the estate that this should be so. The only effect of the statute allowing the testator to exempt his executor from giving bonds is to relieve him therefrom in the first instance, but we think it is plainly not only the right, but in many instances the duty, of the county court, when it has reason to suspect that an estate will be fraudulently administered, or the property thereof lost to those interested in it, on a proper application by a legatee or creditor, to require the executor to give a bond, notwithstanding such exemption in the will.

2. But if, in view of the provisions of the will, the county court had no authority to require Ingalls to give bonds as executor, the bonds upon which this action is brought are nevertheless valid as common-law obligations. They were given voluntarily, contain no conditions unauthorized by law, and are not against public policy. So far as the record discloses, the parties interested in the estate were fully satisfied with the Loewenberg bond, but these defendants seem to have been quite willing to substitute their bond in place of one already satisfactory to the parties, and, having done so, the law will hold them to the obligations they have thus voluntarily assumed. "Because a bond is a voluntary one," says SHERWOOD, C. J., "its binding and obligatory force is by no means lessened": *State* v. *Creusbauer*, 68 Mo. 254. The facts as stated in the

opinion from which the above quotation is made are that prior to the execution of the bond sued on the administrator had given another bond, sufficient in all respects, which had been approved by the probate court, and on which letters were granted, but afterward, on his own motion, without any order of the court or request of the sureties on the original bond, he procured the defendants to sign the bond sued on, signed it himself, and handed it to the clerk of the probate court, who filed it, but never called the attention of the court thereto, and it was held that the bond was good as a voluntary bond, though not approved by the probate court, and that the party injured had his option to sue upon either bond. And in *Folkes* v. *Docminique*, 2 Strange, 1137, a voluntary bond given by an administrator in the spiritual court was held to be valid, though the court had no authority to take it. So also in *McChord* v. *Fisher's Heirs*, 13 B. Mon. 194, it was held that although the appointment of an administrator was void for want of jurisdiction in the court, a bond given by him as such administrator was binding, not as a statutory but as as a common-law bond, being upon good consideration, and not against the policy of the law. And, again, under a statute authorizing the judge of probate to order a new bond to be given in place of an old one, on the petition of a surety seeking a discharge, a person who was not, but erroneously supposed himself to be, surety upon an executor's bond, filed a petition to be relieved from further liability on such bond. Acting upon this petition, and under the same error as the petitioner, the judge of probate ordered a new bond, and entered a decree discharging the petitioner; whereupon the principal on the old bond, acting under the same mistaken idea, filed a new one, which was approved by the judge of probate. In an action against the sureties on the second bond, it was held that,

although it may have been given under a mistake of fact, it was nevertheless valid, as having been voluntarily given: *Brooks* v. *Whitmore*, 142 Mass. 399, 8 N. E. 117. And in *United States* v. *Rogers*, 28 Fed. 607, it was held that it is sufficient to make a bond given by an officer of the government, although not expressly required by law, valid as a common-law obligation, that it is voluntarily given, and that the office and duties assigned to the officer and covered by the bond are duly authorized by law. Now, in this case the bonds on which this action was brought were authorized by law, voluntarily given, and the duties of the executor covered by them provided by law, and they are, therefore, binding obligations, whether the county court had authority to require a bond from Ingalls or not: Schouler on Executors and Administrators, § 143; *State* v. *Creusbauer*, 68 Mo. 254; *State* v. *Cannon*, 34 Iowa, 322; *Holbrook* v. *Klenert*, 113 Mass. 268. Nor do the authorities cited by defendants conflict with this principle, but, so far as they are applicable to the case before us, are in harmony with it. They are cases in which the bond either contained conditions variant from those provided by law, and was extorted under color of office, or the bonds were not authorized or required by a valid law, or were against public policy: *United States* v. *Tingey*, 5 Pet. 115; *Benedict* v. *Bray*, 2 Cal. 251, 56 Am. Dec. 332; *Hicks* v. *Mendenhall*, 17 Minn. 475.

3. But it is contended that under the terms of Mrs. Holladay's will Ingalls was a trustee holding the legal title of the property, and liable to account for the same to the guardian only in a court of equity, and that the county court only had jurisdiction to control his conduct and settle his accounts as executor to the end that all testamentary expenses and debts of the estate should be paid; but that when his account was settled, and the balance in his hands ascertained, he held the same in trust

for the minor children, and can be compelled to account therefor only in a proper court of equity. A sufficient answer to this position is that the will by its terms required him as executor to pay all moneys realized from the property, after paying all testamentary expenses and just indebtedness, to the guardian, to be held, managed, and expended by such guardian for the benefit of her children, and that Ingalls petitioned for and was appointed executor, entered upon and assumed to discharge the duties of such office, and in that capacity gave the bonds in action, which have reference to his duties as executor. It may be that the will gave to him two characters, those of executor and trustee, but the duties of the one are sep_ arate and distinct from and independent of the other; and until he was discharged from the former and assumed the duties of the latter his liability as executor still continued: *White* v. *Ditson*, 140 Mass. 351, 54 Am. Rep. 473, 4 N. E. 606; *Foster* v. *Wise*, 46 Ohio St. 20, 15 Am. St. Rep. 542, 16 N. E. 687; *Cranson* v. *Wilsey*, 71 Mich. 356, 39 N. W. 9. A mere order of final settlement or distribution could not discharge him as executor, or relieve his bondsmen, until the distribution was actually made. This could be done, under the terms of the will, only by paying the balance in his hands to the guardian of the minor children. In *Foster* v. *Wise*, 46 Ohio St. 20, 15 Am. St. Rep. 542, it was urged, in an action on an executor's bond, that at the time it was given the executor held the assets as trustee under the will, by which he was authorized to invest them for the benefit of a third person, but in passing upon this view of the case the court said: "It is a sufficient answer to this to say that he never qualified as such trustee, and no such investments were made. He cannot, therefore, be regarded as having acted in any other capacity than as executor: *Prior* v. *Talbot*, 10 Cush. 1. Moreover, the sureties on his bond as executor are estopped from assert-

ing that he had ceased to be an executor and was only a trustee. In all cases where the condition of the deed has reference to any particular thing, the obligor shall be estopped to say that there is no such thing." So, in this case, Ingalls having qualified as executor, and acted as such throughout, his duty to account for and pay over to plaintiff, as guardian, the amount in his hands belonging to the children is purely executorial, for a failure to perform which he is liable on his bond as executor. By the will his appointment as trustee, if at all, was for the purpose of converting the assets into cash, and paying the proceeds over to the guardian. This duty he never assumed to perform, except in the capacity of executor, and, having assumed so to act, the sureties on his bond are estopped from questioning the capacity in which he was acting.

4. It is next contended that because Ingalls had, prior to the order requiring him to give bonds, paid two thousand nine hundred and thirty-seven dollars and eighty cents on claims against the estate in favor of third persons, and applied the sum of five thousand nine hundred and seventy dollars on a claim in his own favor, for which he was not allowed credit on final settlement, the sureties on the bond in action are not liable for the money so applied. In other words, the contention for the defendants is that such application was a conversion of the funds belonging to the estate, and that they are only liable on their bonds for assets converted and misapplied after the execution thereof. It is undoubtedly the general rule that sureties on official bonds are only liable for defaults occurring after the commencement of the term of office for which they become responsible, and such is the purport of the authorities cited by defendants. But this rule has no application to an administrator's or executor's bond, because the law under which and the purposes for which they are given

are different.    There are no terms of office of an executor or administrator.    It is a continuous employment from the date of appointment until the close of the administration. If during such time an administrator or executor should for any sufficient reason give a bond, he would not thereby be entitled to a new commitment of the estate to his hands, nor would it result in any settlement or rest in his accounts. And, again, the condition of an official bond is that the principal shall faithfully perform the duties of the office to which he has been elected or appointed, and it would be an unwarranted construction of the terms of such bond to hold the sureties liable for any default occurring prior to the commencement of the term; but an administrator's or executor's bond is conditioned "that he shall faithfully perform the duties of his trust according to law": Hill's Code, § 1088.    A failure to pay over to the heir or legatee the amount ascertained on final settlement to be due such heir or legatee, and ordered paid to him, is a breach of such bond and condition ( *Gerould* v. *Wilson*, 81 N. Y. 573); and the sureties thereon at the time of such breach are liable for such default, no matter when the bond may have been executed, or when the funds were actually misapplied or lost to the estate.    The executor or administrator, from the moment he becomes such, is entitled to the possession and control of all the property of the estate, but he is not required to pay or account for any money or property coming into his possession, until ordered to do so by the county court.    In every case, therefore, where a bond is given by an executor during the progress of administration, the sureties assume liability thereunder upon the assumption that he is in possession at the time the bond is given of all the assets of the estate which have been received by him and are unaccounted for, and they in effect agree that he will execute his trust by faithfully administering upon and accounting for such assets.    The

bond is security against a breach of duty, and there is no such breach until there is a failure to account or pay over the money, as ordered by the county court: Schouler on Executors, § 148; 1 Woerner on Law of Administration, § 255; *Schofield* v. *Churchill*, 72 N. Y. 565; *Lacoste* v. *Splivalo*, 64 Cal. 35, 30 Pac. 571; *Pinkstaff* v. *People*, 59 Ill. 148; *Choate* v. *Arrington*, 116 Mass. 552; *Foster* v. *Wise*, 46 Ohio St. 20, 15 Am. St. Rep. 542, 16 N. E. 687; *Dugger* v. *Wright*, 51 Ark. 232, 14 Am. St. Rep. 48; *Brown* v. *State*, 23 Kan. 235; *State* v. *Creusbauer*, 68 Mo. 254; *Beard* v. *Roth*, 35 Fed. 397.

*Pinkstaff* v. *People*, 59 Ill. 148, was an action on an administrator's second bond, in the trial of which the sureties sought to defend, as the sureties do here, on the ground that the assets came into the hands of the administrator and were misapplied before the bond was executed; but Chief Justice LAWRENCE, speaking for the court, said: "Conceding the sureties upon the bond are liable only for breaches occurring after its execution, the breach in the present case is of that character. Even if the money due the heirs had been, as averred in the plea, appropriated by the administrator to his own use before the bond was given, yet, for such misapplication of the funds he would be liable only for nominal damages, if able and willing to pay the heirs whatever might be due them on final settlement. The gravamen of this action is, not that the administrator had confounded the trust funds with his own, and appropriated them to his own use, but that he did not respond to the demands of the guardian. Whether he had, in fact, used the trust funds or not, when this bond was given, they were, in the eye of the law, then in his hands to be administered, and the bond was given as security that they should be so administered. But for this new bond he probably would then have been removed, and the heirs and creditors would have had their recourse upon the first bond. By the additional bond he was kept

in office, the securities thereon undertaking that he would
duly administer all unadministered assets.    The bond can
have no other rational construction, and such must have
been the intention of the parties.    He then stood charge-
able with certain assets.    For the purposes for which this
bond was given they were in his hands.    The securities
undertook that he would pay them over to the persons
entitled to receive them, when duly called upon.    This he
has not done, and hence the liability of these defendants. "
And in *Brown* v. *State*, 23 Kan. 235, it is said that the
liability of an administrator to an estate for property he
has received and converted to his own use is "assets in
his hands belonging to the estate," which it is his duty to
make available, and to account for on final settlement.    In
*Dugger* v. *Wright*, 51 Ark. 232, 14 Am. St. Rep. 48, it was
held that although the executor had converted the funds
of the estate prior to the execution of the bond, it was
still his duty to account to the probate court therefor, and
when he failed to comply with the order of the court
directing him to pay over the amount with which he had
been charged on that account, the sureties on the bond
were liable by the terms of the undertaking to make good
the default.    A surety on an administrator's or executor's
bond, conditioned as the bonds here in action are, is liable
for whatever is properly chargeable to the executor in his
official capacity, and it is not necessary to show that the
funds or property so chargeable were actually on hand
intact or in specie at the time the bond was executed.    If
they are shown to have come into the hands of the execu-
tor in his official capacity, and he has not properly dis-
posed of or accounted for them, he is bound to do so on
final settlement, and the sureties upon his bond, whenever
given, are held for the faithful performance of that duty.

But it is argued that the intention of the guardian in
applying for an order requiring bonds, of the county court

in making the order, and of the sureties in giving the
bond, was only to secure the money and funds on hand at
the time from further loss.    This intention is sought to be
drawn principally from the prayer of the petition.    By
his petition the guardian charged Ingalls with an abuse of
his trust in misapplying the funds of the estate, and
asked that he be required to make final settlement, or give
a bond to "account for the money received by him to the
use of the petitioner's wards."    Under this petition the
county court had authority to compel Ingalls to make
final settlement, if the condition of the estate would ad-
mit of it; if not, to remove him, and appoint some one
else in his stead; or continue him in office with or without
bonds as in its judgment seemed best for the estate.    It
chose, in the exercise of its judicial judgment, to allow
him to continue in office by giving a bond to faithfully dis-
charge the duties of his trust, and it seems to us an unfair
inference to assume that in doing so it did not intend to
provide for the security of the funds which it was claimed
Ingalls had already disapplied.    But why speculate on
this question, when the intention of the sureties plainly
appears from the terms of their undertaking?    By their
bonds they undertook and agreed that Ingalls should
faithfully perform the duties of his trust.    This obliga-
tion they must be held to have intended to assume, and the
law will require its performance by them.

5.    It is claimed on behalf of Thompson and Dekum
that the order of the county court allowing the Spaulding
bond to be substituted for the one formerly given by them,
and exonerating them from any further liability as sure-
ties for Ingalls, relieves them of responsibility for any
violation by Ingalls of his trust as executor occurring sub-
sequent to the date of such order.    By reference to the
statement of facts, it will be observed that this order was
not made on the application of any heir, legatee, or cred-

itor, or other person interested in the estate, but solely at the solicitation and upon the request of Ingalls, and even against the protest of the plaintiff in this case. The power of the county court to relieve a surety on an administrator's or executor's bond from liability is purely statutory. After a bond has been given, the heir, legatee, or creditor of the estate acquires and has a vested interest in it, and the power of the county court over it ceases, except in a proceeding authorized by law. When, therefore, an executor or administrator has given a bond for the performance of his duties as such, he cannot, after it has been accepted and filed, upon his own motion, to suit his own convenience or his own interest, apply for and obtain an order of the county court setting it aside, and discharging the sureties thereof, and substituting a new one in its stead. If such was the rule there would be no security for the estate, and the authorities abundantly show that no such power is vested in a probate court: Schouler on Executors, § 147; *Commonwealth* v. *Rogers*, 53 Pa. St. 470; *Wood* v. *Williams*, 61 Mo. 63; *Burnett* v. *Vandiver*, 56 Ga. 302; *Brooks* v. *Whitmore*, 142 Mass. 399, 8 N. E. 117. In many states the statutes provide that a surety may, on his own petition, and with notice to interested parties, obtain an order, and be discharged from further liability on an executor's or administrator's bond, but we have no such statute in this state. The only method provided by which a surety can be discharged or relieved is found in sections 1096, 1097 of Hill's Code, and it is not pretended or claimed that the proceedings upon which the order in this case was made were in conformity with the provisions of these sections. The authorities above cited clearly show that it does not follow that because a county court has power to compel an executor or administrator to give a bond it also has power to cancel it and substitute another in its place.

After the bond has been given the power of the county court over it ceases, and the heirs, legatees, or creditors for whose security it is given have a vested interest therein of which they can be deprived only by some proceeding known to the law. In this state it is only when the amount of the executor's or administrator's undertaking is insufficient, or the sureties therein, or either of them, have become nonresidents of this state, or are likely to or have become insolvent, that the county court may require a new bond which will operate to discharge the sureties on the former undertaking from any liability on account of their principal, arising from his acts or omissions subsequent thereto; and this proceeding is by statute wisely limited to cases where complaint is made by an heir, legatee, devisee, or creditor, or other person interested in the estate, and who, as we have shown, has a vested interest in such undertaking or bond. A rule permitting a county court, on its own motion, and not in the manner provided by statute, to at will relieve a surety on an executor's bond from liability, would tend greatly to the insecurity of estates, and might in some instances permit the substitution of insolvent sureties for solvent ones. We are clearly of the opinion, therefore, that the order of the county court attempting to relieve Thompson and Dekum from liability on their bond was wholly and entirely void, and the Spaulding bond, not having been given in conformity with the provisions of any statute, and being simply a voluntary bond, had the effect only of adding new or additional security for the faithful performance of Ingalls' duties as executor. In this view of the liability of the sureties upon the respective bonds, the plaintiff was at liberty to proceed against any of or all the bonds, as he might elect.

6. And, finally, for defendants, it is claimed that this action should have been brought in the name of Linda and Ben Campbell Holladay, and not in the name of their

guardian.   This question was not presented in the court below, but is raised here for the first time, and hence comes too late: Hill's Code, § 97; *Seaton* v. *Davis*, 1 Thomp. & C. 91.   We are of the opinion, therefore, that the bonds in action are valid, and that plaintiff is entitled to a judgment against the defendants as sureties thereon, and the only remaining question is as to the amount of such judgment-

7.   It was ascertained and determined by both the county and circuit courts that there was due from Ingalls to the estate the sum of twelve thousand five hundred and fifty-seven dollars and nine cents, of which sum the county court ordered him to pay the guardian nine thousand nine hundred and ninety-four dollars and eighty-seven cents, and to certain claimants the remainder; but on appeal the circuit court modified this order, and decreed that the entire sum, twelve thousand five hundred and fifty-seven dollars and nine cents, should be paid to the plaintiff as guardian.   This decree is, we think, conclusive upon the defendants in this action.   It is by no means certain that the decree of the circuit court ordering the executor to pay to the guardian the entire amount found due the estate from the executor was not erroneous, but the question as to whom the money thus found due should be paid was necessarily determined by the circuit court on the accounting, and so long as the decree stands unreversed, it cannot be questioned in a collateral action either by the executor or his sureties.   In an action on an executor's or administrator's bond, a decree of final settlement is conclusive, not only upon the executor or administrator, but also, in the absence of fraud or collusion, upon the sureties, because by their contract they have made themselves privy to the proceedings against their principal, and when the principal is concluded the surety is concluded also: *Casoni* v. *Jerome*, 58 N. Y. 315; *Housh* v. *People*, 66 Ill. 178; *Slagle* v. *Entrekin*, 44 Ohio St. 637, 10 N. E. 675; *Stovall* v.

*Banks*, 10 Wall. 582.   It follows, therefore, that the plaintiff is entitled to a judgment against the defendant for the amount claimed, less an admitted credit of six hundred and fifty-eight dollars and fifty cents, to wit, for the sum of eleven thousand eight hundred and ninety-eight dollars and fifty-nine cents, with interest thereon from the fourteenth day of December, eighteen hundred and ninety-two, at the rate of eight per cent. per annum, and for his costs and disbursements, and it is so ordered.

MODIFIED.

[Decided December 17, 1894.]

ON MOTION TO RECALL MANDATE.

Opinion by MR. CHIEF JUSTICE BEAN.

The motion of defendants Dekum and Thompson for an order recalling the mandate in this case with a view to the determination of the rights of the defendants among themselves, must be denied.   This is an action at law against the defendants, as sureties on the official bonds of Ingalls as executor, and the only question made by the pleadings, considered by the court, or properly triable in the action, is the validity of the bonds sued on, and the liability of the defendants to the plaintiff.   The rights and duties of the defendants as among themselves, or the amount each should contribute toward the payment of plaintiff's judgment, depends upon the application of equitable principles to a state of facts not disclosed but only hinted at by the record.   In order to prevent further possible litigation, it would be gratifying to the court to be able to enlarge the scope of its decision so as to embrace the respective rights and liabilities of the defendants as between themselves, but it is very doubtful whether this could be done, even if the issues had been framed for that purpose.   Such a question is wholly foreign to the

object of the action, and entirely unnecessary to its deter-
mination, and within *Hovenden* v. *Knott*, 12 Or. 267, 7 Pac.
30, it would seem, could not be considered.   But however
this may be, no such issue was tendered or made, and there
are no findings of fact upon which a decision could be
based.   Nor do we think the judgment as entered in any
way determines this question, or will affect the right of
contribution between the defendants in a proper proceed-
ing for that purpose.   It is a judgment in favor of the
plaintiff against the defendants jointly and severally, and
fixes their liabilities as to the plaintiff, but not among
themselves.                              MOTION OVERRULED.

---

[Decided July 30, 1894; rehearing denied.]