ESTATE OF PETER ANTHONY BRUNER, DECEASED, CLEMENT STEPHEN RODGERS AND ANDREW DENNIS MCNAMARA, EXECUTORS, PETITIONERS, *v.* COMMISSIÓNER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 792, 3022. Promulgated July 4, 1944.

*Rolland L. Ehrman, Esq.*, for the petitioners.
*Richard L. Shook, Esq.*, for the respondent.

OPINION.

SMITH, *Judge*: These proceedings, consolidated for hearing, involve deficiencies in income tax of the estate of Peter Anthony Bruner, deceased, as follows:

| Year | Docket No. | Deficiency |
|---|---|---|
| Period May 10 to Dec. 31: | | |
| 1940 | 722 | $6,603.34 |
| 1941 | 3022 | 16,654.43 |

The sole question in issue is whether the estate is entitled to the deduction in each taxable year of the net income of the estate which the executors credited to the beneficiaries of a testamentary trust which was set up on January 17, 1942, except as to $1,200 in cash paid to two beneficiaries in 1941.

The facts are stipulated.

The decedent died testate May 9, 1940. In his will he named his nephews, Clement Stephen Rodgers and Andrew Dennis McNamara, executors and trustees of his residuary estate. Letters testamentary were issued to the executors on May 28, 1940. Fiduciary income tax returns for the estate for the period May 10 to December 31, 1940, and for the calendar year 1941 were duly filed with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh.

Decedent provided in his will in part as follows:

I give, devise and bequeath all of the balance of my estate, real, personal and mixed, of every kind, character and description and wheresoever situated, after paying any debts I may owe and the legacies above provided, unto my nephews, ANDREW DENNIS MCNAMARA and CLEMENT STEPHEN RODGERS in trust for the following uses and purposes, to-wit:

My said trustees shall pay one-third of the net income and proceeds of the remainder of my estate, semi-annually, unto my brother, JOSEPH BRUNER, for and during the term of his natural life; and they shall pay one-third thereof, semi-annually, unto my stepsister, MRS. ELIZABETH RODGERS, for and during the term of her natural life; and one-third thereof, semi-annually, unto PAUL THOMAS MCNAMARA, ANDREW DENNIS MCNAMARA, MARY MARGARET MCGANN and ADA SPLAIN, children of my deceased sister, ANNIE BRUNER MCNAMARA, share and share alike.

Said payments to continue semi-annually from the time of my death and up to the date of the death of the survivor of the two above named, beneficiaries, JOSEPH BRUNER and ELIZABETH RODGERS.

The will further provided:

Until the death of both JOSEPH BRUNER and ELIZABETH RODGERS, the children of one of them who shall predecease the survivor of them shall receive the one-third of the income herein provided to be paid his or her parent; share and share alike.

The will further provided that for three years succeeding the death of the survivor of Joseph Bruner and Elizabeth Rodgers the income of the estate should be paid to named beneficiaries and thereafter distributed.

The net income of the estate for the period May 10 to December 31, 1940, and for the calendar year 1941, respectively, as shown in the fiduciary returns filed by the executors was $30,794.54 and $49,815.74. The entire income for 1940 and $33,536.20 of the income of 1941 were credited to the testamentary trust beneficiaries in the accounts of the executors for the respective years. The amounts of such income were claimed in the returns for those years as deductions under section 162 of the Internal Revenue Code. It is now stipulated that the net income of the estate was $31,282.86 for the period May 10 to December 31, 1940, and $48,690.78 for 1941.

No part of the income credited to the beneficiaries in 1940 was distributed to them in that year. On December 6, 1941, $1,200 of the amount credited to beneficiaries in that year was distributed to two of them, $600 to each.

The executors filed their first and final account in the Orphans' Court of Butler County, Pennsylvania, on May 10, 1941. The account showed total assets of $510,616.85, which amount included all income of the estate from May 9, 1940, to May 10, 1941; total credits of $57,761.26; and a balance due of $452,855.59. The account was confirmed on June 18, 1941. No credit was claimed in the account, either against corpus or income, for the income credited to the beneficiaries in 1940 or 1941.

On July 9, 1941, the executors petitioned the Orphans' Court for the appointment of an auditor "to make distribution not only of the funds in their possession as appears in and by said final account filed at above -Number and Term, but also of all funds of said estate received by them as such executors to and until the date of the final hearing and adjudication by the Auditor appointed by this Honorable Court to make such distribution." In response to the petition an auditor was appointed by the court on July 9, 1941, and on December 11, 1941, he filed his report, which showed the following:

| | | |
|---|---:|---:|
| Schedule I, assets and funds to be allocated to corpus | | $469,966.77 |
| Schedule II, assets and funds to be allocated to income | | 80,024.29 |
| | | |
| Total assets | | 549,991.06 |
| Schedule III, costs and expenses to be allocated to corpus | $159,796.74 | |
| Schedule IV, costs and expenses to be allocated to income | 33,022.87 | |
| | | 192,819.61 |
| | | |
| Balance for distribution | | 357,171.45 |

The total assets of $549,991.06 shown above in the auditor's report included all income received by the executors from May 9, 1940, to September 1, 1941, except $9,222.22 of "oil" income for the month of July 1941. The auditor made certain changes in the allocation of assets and funds between corpus and income as shown in the executors' first and final account. On January 17, 1942, the executors transferred all of the assets of the estate to themselves as trustees under decedent's will. An entry showing such transfer was made in the accounts of the estate.

On January 20, 1942, the trustees filed with the Orphans' Court their first partial account on the administration of the trust estate. In that account no credit was claimed for any of the amounts credited to the beneficiaries in the accounts of the estate, except for the $1,200 which was actually paid to the beneficiaries in 1941.

No distribution of income other than the said $1,200 have been made to any of the benficiaries up to the present time.

In his audit of the estate's income tax returns the respondent allowed the deduction in the 1941 return of the $1,200 which was distributed to the beneficiaries during that year and disallowed the balance of the deductions claimed under section 162 in both years.

Section 162 of the Internal Revenue Code provides in material part as follows:

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or bencficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir or beneficiary.

Our question is whether the estate is entitled to deduct from gross income in the income tax returns filed for 1940 and 1941 the entire net

income of the estate for those years or any portion thereof. The respondent does not question the right of the estate to the deduction from the gross income of 1941 of $1,200 paid to two beneficiaries in that year. He has allowed such deduction in the determination of the deficiency for 1941.

The respondent contends that, since the estate was in process of administration and settlement until after December 31, 1941, section 162 (c) applies in this case and bars the deduction from gross income of amounts not actually distributed to the testamentary trust beneficiaries.

The petitioner, on the other hand, contends that the net income of the residuary estate was "to be distributed currently by the fiduciary" within the meaning of section 162 (b) and that that subsection applies to the facts in these proceedings. They point out that the will of the decedent specifically provides that the trustees (who are also the executors) shall pay the net income to named beneficiaries and that such payments shall "continue semiannually from the time of my death." In their brief they state that they do not claim that the net income of the estate for 1940 and 1941 was "properly paid or credited" to the trust beneficiaries so as to be deductible under subsection (c).

Subsection (b) is a general provision. It applies where the income of a fund is to be paid currently by the fiduciary to the beneficiary. In such case the beneficiary is liable to income tax upon the income whether he receives it or not. The fiduciary is entitled to a deduction of such income taxable to the beneficiary in the income tax return filed by the fiduciary. It matters not whether the fiduciary's books have credited the beneficiary with such income.

Subsection (c) is a particular provision. It applies generally to estates in process of administration or settlement. A particular provision of a statute takes precedence over a general provision.

In construing subsection (b) the Supreme Court has held that "The test of taxability to the beneficiary [and therefore the test of deductibility by the fiduciary] is not receipt of income, but the present right to receive it." *Freuler* v. *Helvering*, 291 U. S. 35. Relying upon this construction, it is contended on behalf of the petitioners that under the provisions of decedent's will and under the laws of the Commonwealth of Pennsylvania the beneficiaries of the testamentary trust created by the decedent by his will had a present right to receive the income of the estate semiannually from the date of decedent's death and that such income is therefore deductible by the estate and taxable to the beneficiaries during the years 1940 and 1941.

The laws of the Commonwealth of Pennsylvania recognize the right of beneficiaries to the income of a testamentary trust from the date of the testator's death in the absence of a clear intention to the contrary. In *In re Brown's Estate*, 190 Pa. St. 464; 42 Atl. 890,

the Supreme Court of Pennsylvania approved the opinion of the trial court, which reads in part as follows:

There can be no question as to the rule that where the interest or income of a fund is bequeathed to one person for life, with remainder over of the principal to another, the legatee for life is entitled, the same as an annuitant, to interest from the death of the testator, unless there is something in the will to control it otherwise. * * * And this is as true of interest on the residue of the estate or an aliquot part of it, as of the interest on a fund of specific amount. * * * The rule is not modified by the fact that there is a direction to pay the fund to trustees, who are to invest and pay over the income; * * *

To the same effect is *In re Band's Estate* (Super. Ct. Pa.), 157 Atl. 511, where it was held that the income of the estate during the process of administration belonged to the beneficiaries of three testamentary trusts, the corpus of one of which comprised the residue of the estate. The court said in conclusion:

We repeat, the testator had in mind income actually received by the estate whether interest or dividends or any other source, and that each cestui que trust was to get his or her proportionate share from the time of his death. This was his evident intention and such disposal of the income is fair to all parties interested. We may add, although the point is not disputed, that the cestuis que trust need not await the transfer of the fund to the trustees, but may receive it at the hands of the executors. *Brown's Estate*, 190 Pa. 464, 42 A. 890.

The respondent does not question the right of the testamentary trust beneficiaries to the income of the testamentary trust from the date of the decedent's death, but he contends that they had no "present" right to receive it during the years 1940 and 1941 for the reason that the testamentary trust was not set up until January 17, 1942.

We think that this contention of the respondent must be sustained. There were no trustees of the residuary estate until they qualified as such on January 17, 1942. Their capacity as executors was entirely different from their capacity as trustees. While acting as executors they were under the orders of the Orphans' Court. They did not distribute to the testamentary trust beneficiaries any of the income of the estate during 1940 and 1941, with the exception of $1,200 which was paid by them to the beneficiaries in December 1941, which payment has been allowed by the respondent as a deduction from the gross income of the estate for the calendar year 1941. We do not think that they were under any obligation to pay over any income of the estate to the testamentary trust beneficiaries while acting as executors. The trust beneficiaries did not have an enforceable right against the executors for such payment.

It is further pertinent to note the following facts: (1) That the will of the decedent provided that payments of the income of the residuary estate should be made by trustees of the testamentary trust and not by the executors; (2) that the executors' accounts made to the Orphans' Court, which were approved by it on or about January 17, 1942, do not show credits to the beneficiaries of the testamentary trust; and (3)

that the amounts of the net income of the residuary estate credited to the trustees by the executors for the years 1940 and 1941 were not the correct amounts. We do not know whether the testamentary trust beneficiaries reported in income tax returns filed by them for 1940 and 1941 any part of the net income of the estate during the period of administration. For the above cited reasons we are of the opinion that the net income of the residuary estate was not "to be distributed currently by the fiduciary" to the testamentary trustees during the period of administration.

Although the petitioners do not contend that the amounts noted in the executors' accounts as credited to the beneficiaries for the years 1940 and 1941 were "properly *. * * credited" to the testamentary trust beneficiaries during 1940 and 1941, it is pertinent to consider this question. The respondent contends, upon the authority of *Commissioner* v. *Stearns* (C. C. A., 2d Cir.), 65 Fed. (2d) 371, that the amounts were not properly credited. In that case the court stated:

This serves to determine what is meant by the word, "credited," the alternative to "paid," though we can find no authority on the point. The income must be so definitively allocated to the legatee as to be beyond recall; "credit" for practical purposes is the equivalent of "payment." *Therefore, a mere entry on the books of the fiduciary will not serve unless made in such circumstances that it cannot be recalled.* If the fiduciary's account be stated inter partes, that would probably be enough; it would certainly be, when a court, as for example, the surrogate in this instance, passes the account and directs payment. But the unilateral act of entering the items in the account is not conclusive. * * * [Emphasis supplied.]

We think this contention of the respondent must be sustained. The estate was in process of administration or settlement during the years 1940 or 1941. The income was the property of the executors. It was to be disposed of according to the decree of the Orphans' Court; and that decree was not entered until January 17, 1942. The credits made by the executors were not beyond recall. In our opinion the testamentary trust beneficiaries were not liable to income tax upon their distributive shares of the income during the taxable years before us.

If it be true that under the Pennsylvania law the testamentary beneficiaries will ultimately receive the net income of the estate for the years 1940 and 1941, it will be received by them as income upon which tax has been paid by the estate; they will not be subject to income tax upon any amount of income of the residuary estate for 1940 and 1941 which may in the future be paid over to them. See *Ethel S. Garrett*, 45 B. T. A. 848, and cases cited.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

MURDOCK AND DISNEY, *JJ.*, dissenting: We think the petitioner is entitled to a deduction, whether 162 (b) or (c) applies.