Estate of E. J. Hyland, Deceased, Gertrude M. Dove, Executrix v. Commissioner.
Estate of E. J. Hyland v. Commissioner
Docket No. 22289.
United States Tax Court
1951 Tax Ct. Memo LEXIS 117; 10 T.C.M. (CCH) 823; T.C.M. (RIA) 51255; August 30, 1951
*117 E. J. Hyland died testate February 3, 1937. Petitioner and her sister qualified and were appointed executrices of his estate. Decedent's will provided for a trust to be established. Beneficiaries were certain designated relatives and their children. The executrices were to be trustees following their qualification and appointment as such. At the time of decedent's death the cash and personal property on hand were insufficient to pay his personal obligations and other claims outstanding against the estate. Two pieces of real property in the City of Portland were included in the assets of the estate. As a result of selling one piece of the property and refinancing the other the estate was placed on a solvent basis in December, 1944. Immediately thereafter the process of settling all claims outstanding against the estate was begun. By January 15, 1945, all of the claims had been settled except that of the State of Oregon for inheritance taxes. This claim was paid on November 13, 1945. Thereafter there remained only the indebtedness against the mortgaged property, the attorneys' and executrices' fees and various current expenses. These were paid from time to time during the taxable year. *118 Held: The period of administration and settlement of the estate had not expired prior to December 31, 1945. The petitioner and her sister were acting as executrices in 1945 and were under no obligation to pay income from the estate to the testamentary trust beneficiaries. Estate of Peter Anthony Bruner, 3 T.C. 1051, followed. Peter A. Schwabe, Esq., 210 Pacific Bldg., Portland, Ore., for the petitioner. John D. Picco, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion
*119 This case involves the income tax liability of the Estate of E. J. Hyland, Deceased. The petitioner herein requests a redetermination of respondent's determination of a deficiency in the amount of $703.11 in income tax for the taxable year 1945. Findings of Fact So much of the facts as were stipulated are so found and made a part hereof. Other facts are found from the pleadings, the oral testimony of one witness, and certain documentary evidence. Petitioner is the duly appointed and qualified executrix of the estate of E. J. Hyland, Deceased. Her fiduciary income tax returns were prepared on the cash basis and filed with the collector of internal revenue at Portland, Oregon. The tax year in controversy is the calendar year ending December 31, 1945. E. J. Hyland, hereinafter sometimes referred to as "decedent", died testate on February 3, 1937, [1] a resident of Portland, Oregon. His will was admitted to probate by the Probate Department of the Circuit Court of Multnomah County, State of Oregon, on February 9, 1937. Gertude M. Dove and Mabel A. Dove, named in the will and codicil thereto as executrices and also as trustees, were appointed and qualified as executrices for the *120 Estate of E. J. Hyland, Deceased, and letters testamentary were duly issued to them. Mabel A. Dove subsequently died and Gertrude M. Dove was named as sole executrix in a court order entered February 7, 1949. For convenience, the Estate of E. J. Hyland, Deceased, is sometimes hereinafter referred to as the "estate." The decedent created a trust in his will for certain designated relatives and their children. The trust corpus was to consist of two pieces of real property in Portland, Oregon, namely, Lot 4, Block 40, Couch Addition to the City of Portland, and Lot 2, Block 59, City of Portland, also known as the Hyland Hotel building. He named his niece, Charlotte Callahan, and his nephew, Fred Johnson, residing in Rockford, Illinois, as the income beneficiaries of the trust. In the event of the death of either beneficiary, his share of the income was to go to his children. Upon the death of the survivor of the two named beneficiaries, the trust was to terminate and the corpus divided equally *121 between their respective children. The trust could also be terminated by mutual agreement of the trustees and all the beneficiaries. Charlotte Callahan and Fred Johnson were named as residuary legatees, and the balance of the estate, made up mostly of personal property, was left to them. The pertinent provisions of the will follow: "I. It is my demand, and I do so order, that all my just debts and funeral expenses be paid and satisfied as soon as conveniently can be done after my decease. "II. To my beloved niece Charlotte Callahan, and my beloved nephew Fred Johnson, both now residing in the City of Rockford, and State of Illinois, I give and bequeath to them for and during their natural lives, to share and share alike, all the rents and income of and from the following described real property * * *. This gift and bequest to the above named Charlotte Callahan and Fred Johnson, is made to said Legatees upon the following conditions named and set forth in the following paragraphs herein set forth, viz., "III. It is my request and I do so direct, that my executors hereinafter named, and who are also named as my trustees herein, shall immediately and upon final settlement, discharge *122 and termination of my estate as executors they shall automatically become my trustees and after their appointment and qualifications as such trustees they shall take full charge, possession and supervision and the absolute control of the real property herein above described, collect all the rents and revenues therefrom, and make all contracts, leases and agreements for the rental of same on such terms to my said Trustees herein named, may seem fair in the matter of rents. "IV. Before any distribution of the rents shall be made to the heirs above named my said Trustees shall deduct from said rents and income from said above described real property, all sums and amounts expended and paid out for repairs and the upkeep of same during their administration of said trusteeship herein, including all taxes due and payable against the same Street improvements, sewer assessment, liens and other assessments legally levied against said real property by the City of Portland, and all other tax-levying Bodies, and Boards of Multnomah County and State of Oregon. "V. I further demand that my Trustees herein named, shall keep the building or buildings on said real property fully insured against *123 loss by fire in such company or companies and for such an amount and premium as my said Trustees shall judge and select, and they shall also make all other necessary repairs and improvements in and about said real property not herein specifically enumerated or mentioned and which in their judgment and discretion shall or may seem necessary for the rental profits and benefit of same, "VI. In the event of the death of my said niece Charlotte Callahan, or the death of my said nephew Fred Johnson, her or his share of the rents and income from said property above described, shall be paid by my said Trustees to the surviving children of such decedent, to share and share alike, but under no circumstances or other conditions, other than these hereinafter set forth, shall the possession or fee-simple title to the real property herein above described become vested in the children of my niece or my nephew above named until after both my niece and nephew have departed this life, or are dead. * * * This Trusteeship shall end and terminate by the mutual consent of all the heirs and the two Trustees herein cited and named." * * *
Decedent had invested heavily in real property and as a result *124 of the depression he was involved financially at the time of his death. The cash and personal property on hand were insufficient to pay decedent's debts and the claims against the estate. This condition did not improve in 1937 and 1938, and solvency of the estate was maintained only because of the forbearance of the creditors. In 1939 the mortgagees instituted a foreclosure suit against the Couch property. The executrices averted the consequence of foreclosure by agreement with the mortgagees. As a result, the mortgagees agreed to dismiss the suit and release their mortgage liens. The executrices agreed to sell the property and apply the proceeds in reduction of their indebtedness. This was done and the Couch property was sold in 1941. On December 7, 1944, the executrices succeeded in refinancing the Hyland Hotel property. They obtained a loan of $19,000 and gave a first mortgage on the property. They were also able to renew the leases on the property at increased rentals. As a result of these activities, approved by the Probate Court, the estate was saved from insolvency and the Hyland Hotel property made available for eventual distribution under the will. The process of satisfying *125 outstanding unpaid claims against the estate began on December 9, 1944, two days after the loan of $19,000 was effected. All of the outstanding claims were paid by January 15, 1945, except that of the State of Oregon for inheritance taxes, which was paid on November 13, 1945. Thereafter there remained only the loan which was secured by the Hyland Hotel property, executrices' fees, attorneys' fees, and various current expenses. These were paid from time to time during the taxable year. On October 2, 1945, the executrices filed a report and account with the Probate Court, which itemized the receipts and disbursements for the period from December 7, 1944 to October 1, 1945. In October, 1945, they filed a "Petition to Fix Executrices' and Attorneys' Fees." Pursuant thereto the Court entered an order allowing $1,238.42 for executrices' fees and $2,500 for attorneys' fees. On October 13, 1945, the executrices' fees and attorneys' fees were paid. In November of 1945 the executrices filed an inheritance tax report with the State Treasurer, and in the same month the court assessed the inheritance taxes due to the State of Oregon. On November 13, 1945, the executrices paid $286.92 for taxes *126 due the State of Oregon. In 1943 Charlotte Callahan, Fred Johnson, and their children deeded the Hyland Hotel property to B. Jay Knight. In 1945 Charlotte Callahan and Fred Johnson assigned to B. Jay Knight their right to receive the income on the Hyland Hotel property. The deed and assignment were duly recorded with the County Clerk of Multnomah County, State of Oregon. Thereafter Knight claimed that he was the owner of the property; that the income should be paid to him; and that he was entitled to be consulted and informed on all matters concerning the property. The executrices disputed the validity of the assignment and deed, and refused to recognize his claim. This controversy between Knight and the executrices continued for some time. Knight was "invited" to test the validity of the assignment and deed by appropriate court proceedings, but this was not done. Knight was informed that no distribution of property or income would be made to him, despite the request by Charlotte Callahan and Fred Johnson that his claim to the property and the income be recognized by the executrices. The executrices decided that, pending the outcome of the controversy, they would continue the administration *127 of the estate under the supervision of the Probate Court, and would make no payments of income without the prior authorization of the court. It was agreed in 1947 that payments of income would be made in the name of Charlotte Callahan and Fred Johnson, but that the remittances would be sent to the law office address of B. Jay Knight in Rockford, Illinois. On October 9, 1947, pursuant to the authorization of the Probate Court, the executrices paid $1,500 to each beneficiary, in the manner indicated above. Thereafter $50 per month was sent to each beneficiary, care of B. Jay Knight. Payments were discontinued in June 1949, because of increased expenses. No income was distributed by the executrices before October 9, 1947, and no payments of income were ever made without the prior approval and authorization of the Probate Court. The Estate of E. J. Hyland, Deceased, was not financially solvent until 1945, and before that year there was no net income available for any purpose. At no time in 1945, or at any time prior thereto, were any steps taken by the executrices to set up the testamentary trust or to qualify themselves as trustees. No action was taken by the executrices in 1945 to *128 file a final account, or to obtain an order closing the estate or directing the transfer of property to themselves as trustees. In 1945 no income was paid to or received by the trust beneficiaries and no income was credited to them on the books of the estate. Nor was there any accounting by the executrices to themselves as trustees, or were any entries made on the books of the estate reflecting the transfer of property, or the payment of income, to the trustees or the trust beneficiaries. No court order has ever been entered discharging the executrices or closing the estate. In October, 1945, in a letter to the attorney for the beneficiaries, the executrices first indicated that they were ready to begin to disburse some income to the beneficiaries. They stated that they felt the estate was then in a position to pay safely $75 per month to each beneficiary. As stated above, correspondence and controversy continued for some time and no payment was made until October 9, 1947, pursuant to the authorization of the Circuit Court of Multnomah County, Oregon. We make the following additional finding: The Estate of E. J. Hyland, Deceased, was in process of administration at the close *129 of 1945. The period of administration and settlement of the estate had not expired prior to December 31, 1945. Gertrude M. Dove and Mabel A. Dove were acting in their capacity as executrices in 1945, and were under no obligation to pay income from decedent's estate to the beneficiaries of the testamentary trust. The executrices did not set up the trust in 1945, nor did they qualify as trustees or act as such in that year. Opinion VAN FOSSAN, Judge: The facts briefly summarized are these: E. J. Hyland died testate February 3, 1937. His will was admitted to probate. Petitioner herein and her sister, since deceased, qualified and were issued letters testamentary by the Probate Department, Circuit Court of Multnomah County, Oregon, as executrices of his estate. Decedent's will provided for a trust to be established. Beneficiaries were certain designated relatives and their children. The executrices were to be trustees following their qualification and appointment as such. At the time of decedent's death, the cash and personal property on hand were insufficient to pay his personal obligations and other claims outstanding against the estate. The solvency of the estate was maintained *130 only through the forbearance of the creditors. Two pieces of real property in the City of Portland were included in the assets of the estate. As a result of selling one piece of property and refinancing the other, the estate was placed on a solvent basis in December, 1944. Immediately thereafter the process of satisfying all claims outstanding against the estate was begun. By January 15, 1945, all of the claims had been settled except that of the State of Oregon for inheritance taxes. This claim was paid on November 13, 1945. Thereafter there remained only the indebtedness against the mortgaged property, the attorneys' and executrices' fees, and various current expenses. These were paid from time to time during the taxable year. In her petitioner the petitioner assigns as error respondent's disallowance of a deduction for income made payable or distributable to the trust beneficiaries during the taxable year in accordance with section 162 (b) of the Internal Revenue Code, [2] and his disallowance of a deduction for income paid to the legatees during the taxable year as provided in section 162 (c), Internal Revenue Code. The issue arising *131 under section 162 (c), supra, has apparently been abandoned by petitioner and no useful purpose would be served by discussing it here. There remains for our consideration only the question of whether the income of the estate, or any portion thereof, was currently distributable to the trust beneficiaries during the taxable year within the meaning of section 162 (b), supra. *132 Petitioner concedes on brief that "* * * according to the terms of the Will, income from the realty is to be paid out only after the administration [of the estate] is ended, * * *." The crucial question emerges then, whether the period of administration actually ended during the taxable year and, if so, when. The answer to this question is dispositive of the issue herein. Petitioner contends that after January 15, 1945, and at the latest after November 13, 1945, the estate was no longer in the process of administration and that thereafter she and her sister were, in fact, acting as trustees under the terms of decedent's will rather than as executrices. Whether the estate was in the process of administration throughout 1945 is purely a question of fact. And all the evidence of record before us indicates that it was. From the time they qualified and were appointed as executrices, petitioner and her sister were under the jurisdiction and control of the Probate Department of the Circuit Court of Multnomah County, Oregon. 2 O.C.L.A. 13-206, 13-501; In re Norman's Estate, 159 Or. 197, 78 P. 2d 346; In re Workman's Estate, 156 Or. 333, 65 P. 2d 1395, 68 P. 2d 479; *133 see, also, In re Roach's Estate, 50 Or. 179, 92 P. 118. No service as testamentary trustees was expected of them until they had performed their obligation as executrices and secured an order of the Probate Court permitting them to distribute the property to themselves as trustees. In re McDermid's Estate, 109 Or. 633, 222 P. 295. And they must qualify as trustees before they can exonerate themselves as executrices. Roach's Estate, supra.Then and not until then could their duties as trustees begin. Bellinger v. Thompson, 26 Or. 320, 37 P. 714; 26 Or. 320, 40 P. 229. Petitioner relies upon William C. Chick, 7 T.C. 1414, affirmed 166 Fed. (2d) 337; certiorari denied, 334 U.S. 845, to support her contention that she and her sister did, in fact, act in the capacity of trustees during 1945 rather than in that of executrices. The rationale of that case does not apply here. The petitioner there had been qualified and appointed trustee at the same time that he qualified or was appointed executor. This Court had but to determine in which capacity he was acting during the time there *134 involved. It is a sufficient answer to this to say that here petitioner and her sister never qualified as trustees. There was no trustee during 1945 and there are no grounds whatever for regarding them as having acted in any other capacity than as executrices. Moreover, there does not appear to have been any unwarranted delay in the administration of the estate. Our holding in Estate of Peter Anthony Bruner, 3 T.C. 1051, is clearly applicable. Accordingly, on the basis of that case, we conclude that respondent did not err in his determination. Decision will be entered for the respondent. Footnotes
1. The parties have stipulated this date, while in the petition to fix executrices' and attorneys' fees filed in the Probate Court, February 5, 1937, is given as the date of Hyland's death.↩
2. SEC. 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * *
(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year; * * *↩